CHARLES PHIPPS, Plaintiff-Appellee, v. ARNOLD COHN, Defendant-Appellant.

Fifth District   No. 5—85—0155

Opinion filed December 20, 1985

Storment & Read, of Belleville, for appellant.

Timothy C. Stubblefield, of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

This appeal arises out of a conversion action brought by plaintiff Charles Phipps against defendant Arnold Cohn. At a bench trial in the circuit court of St. Clair County, the defendant was found to have converted personal property of Phipps by and through his agents and employees. The trial judge entered judgment in favor of Phipps for $3,250 plus costs of $49.20. We affirm.

The facts are as follows:

Thomas Felis, an employee of Cohn, testified that David Martin, Sr., came into his office looking for work for himself and his son. Martin, Sr., had previously spoken with Cohn. Felis told Martin, Sr., that he had one small job for him that consisted of removing a bed and table from a house and raking a yard. Felis stated that he knew David Martin, Jr., would be doing some of the work. Felis gave Martin, Sr., a list of instructions to give Martin, Jr. Martin, Jr., was to carry out those instructions, return to Felis, and then be paid. Included in the list of instructions were: "c) Interior of house to be cleaned; clear out all old clothes, furniture, toys, boxes, rags, garbage and anything of any nature not part of originally built house." Handwritten on the bottom of the page were additional instructions to "Take bed and table out of 1422 North 52nd, and take to 620 North 7th Street, and stay there until new tenants move in."

Phipps, who lives at 1422 North 54th Street, stated that on June 16, 1981, he was driving home and a friend flagged him down and asked him why he was moving. Phipps immediately returned home and discovered that a truck and a car containing his household goods had just departed. Apparently the movers had broken a window to get into the house. A neighbor told Phipps that the man who lived across the street from Phipps had moved the furniture.

Phipps then flagged down a passing police car driven by Officer Calvin Hammond of the Washington Park police department and informed him that someone had removed all of his household goods from his home.

Officer Hammond apprehended Ollie Rone, a neighbor of Phipps. Rone indicated that he had helped another individual by the name of David Martin, Jr., remove personal property from the house of Charles Phipps and that they working for Mr. Cohn. Rone also stated that he had bought some of Phipps' property for $62 and that those items were in his possession.

Officer Hammond then located David Martin, Jr., and took both

Martin, Jr., and Rone to the police station, where he prepared a report.

At the police station both men indicated that they were working for Arnold Cohn. Officer Hammond testified that he called the office of Arnold Cohn to verify their story, and he was told that he would have to contact Mr. Cohn on his beeper. Officer Hammond dialed the beeper number and Cohn answered the phone, identifying himself. Officer Hammond explained the situation and asked Cohn if Martin and Rone were employed by him. Cohn answered affirmatively, and Officer Hammond asked him if he sent them to the residence to clean it. Cohn said yes he did send them to clean it, but apparently they went to the wrong address. Cohn told Officer Hammond that he would take care of the matter and stated that he would get in touch with Phipps and return the furniture and compensate Phipps for any damage.

The furniture was never returned, and no compensation was ever paid to Phipps by Cohn.

Cohn at trial denied speaking with Officer Hammond on June 16, 1981, and also denied that Martin, Jr., was supposed to clean out the house. He stated that the Martins were only supposed to give him a bid on cleaning out the property located at 1422 North 52nd.

Cohns' first contention is that Phipps failed to show that a principal-agent relationship existed between Cohn and the individuals who removed the furniture from Phipps' house.

█ The question of whether a principal-agent relationship existed is one of fact, to be decided by the court or the jury. (*Krug v. Machen* (1974), 24 Ill. App. 3d 526, 531, 321 N.E.2d 85, 89.) A principal is liable for acts committed within the scope of authority by an agent and not for acts of an independent contractor. (*Dumas v. Lloyd* (1972), 6 Ill. App. 3d 1026, 1030, 286 N.E.2d 566, 569.) The classic test as to whether a contractor is independent or a mere servant depends upon his right to control the manner and the method in which the work is carried on independent of supervision and direction by his employer. *Gunterberg v. B & M Transportation Co.* (1975), 27 Ill. App. 3d 732, 738, 327 N.E.2d 528, 533.

█ The trial court found that a principal-agent relationship existed, and that Martin, Jr., and the other individuals were acting as Cohn's agents. We agree.

The instructions that were given to David Martin, Jr., were introduced into evidence. They are very detailed and even provide for the method of cleaning. Thus, the instructions are indicative of Cohn's control over the work; control beyond that which would be exercised over an independent contractor. Furthermore, Cohn's statements to

Officer Hammond that he would "take care of the matter" indicates control over the individuals and the property.

We agree with Mr. Cohn that agency cannot be proved by the statement of the agent made outside of the presence of the principal and not subsequently approved by him. (*In re Estate of Boysen* (1966), 73 Ill. App. 2d 197, 199, 218 N.E.2d 838, 839.) However, as we previously mentioned, there was adequate evidence introduced at trial that indicated the individuals were acting as agents for Cohn. Thomas Felis, who worked for Cohn, stated that he gave the aforementioned instructions to Martin, Sr., to give to Martin, Jr. Felis further stated that he told Martin, Sr., to go to 1422 North 52nd Street and take a table and chairs out of the house and to clean it. Felis stated that he gave Martin, Sr., a key to the premises.

Cohn next contends that the trial court erred in entering judgment for Phipps because the purported agents exceeded their authority. Under the doctrine of *respondeat superior*, the master is responsible for negligent acts of his servant or agent while acting within the scope of his employment. (*Lipscomb v. Coppage* (1963), 44 Ill. App. 2d 430, 430p, 197 N.E.2d 48, 56.) When an agent exceeds his authority, a principal is not bound unless he ratifies the act committed. (*Karetzkis v. Cosmopolitan National Bank* (1962), 37 Ill. App. 2d 484, 490, 186 N.E.2d 72, 75.) Defendant alleges that the agents exceeded their authority by breaking and entering a house they were not supposed to be in. However, after thoroughly examining the evidence, including the list of instructions provided by Cohn, we agree with the trial court that the agents performed the same tasks at 1422 North 54th Street as they were supposed to perform at 1422 North 52nd Street. The agents cleaned out the house and removed all of the "clothes, furniture, toys, boxes, rags, garbage and anything of any nature not part of the originally built house." Thus, Cohn's agents had express authority to clean out a house and remove the furniture. They had the right house number but the wrong street. The fact that they negligently went to the wrong house does not relieve the defendant of his liability.

Even assuming *arguendo* that the removal of the household items from 1422 North 54th Street was not within the agent's scope of authority, there was evidence of ratification. Officer Hammond testified that Cohn told him the incident was a mistake and that he would contact Phipps, return the furniture, and compensate Phipps for any damages. Ratification may be found to have taken place when the principal, with full knowledge of the material facts, takes a position inconsistent with nonaffirmation. (*Karetzkis v. Cosmopolitan Na-*

*tional Bank* (1962), 37 Ill. App. 2d 484, 490, 186 N.E.2d 72, 75.) Cohn's statements to Officer Hammond were made after he had been advised of the facts; thus, ratification did occur.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

KARNS and HARRISON, JJ., concur.